**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case 21-cr-201 (DLF) |
| ) | |
| STEPHEN BRIAN QUICK, ) | |
| ) | |
| Defendant. ) | |

## DEFENDANT'S SENTENCING MEMORANDUM

**COMES NOW**, Defendant Stephen Quick, by and through Counsel, Joseph Passanise and Taylon Sumners of WAMPLER & PASSANISE LAW OFFICE, and moves this Court for a sentence of a fine and 12 months' probation in accordance with the following Legal Suggestions:

## RELEVANT FACTORS IN THE INSTANT CASE

### I.     Offense Characteristics

Stephen Quick was 49 years old when he Pled Guilty to Count Four of the Criminal Information, for Parading, Demonstrating, or Picketing in a Capitol Building, in violation of 40 USC § 5104(e)(20(G) on December 23, 2021, (Pre-Sentencing Investigation Report hereinafter referred to as PSI at page 4, paragraph 7). Quick has remained on Pre-Trial Supervision since February 12, 2021, and has had **no** violations during the pendency of this case.  He fully cooperated with the FBI and the House Investigative Committee.

On a whim, Quick decided to travel to Washington, D.C. for the "Stop the Steal Rally" with three others: Michael Quick, Zachary Martin, and Kari Kelley. The Quicks purchased VIP seating for the rally, without even knowing all of the speakers coming to the rally. Rather, Quick, his brother Michael, and friend Zachary Martin felt compelled to be a number in the crowd at the rally as patriots based on the skepticism surrounding the integrity of the 2020 election results.

1

The Quicks and Martin had never even participated in a political rally revolving around the 2020 election before January 6, nor donated to interest groups during the election process. The four rented a van and drove to Washington to do what they felt at the time was their civic duty. The spur of the moment decision to make the trip from Missouri to Washington by van had them were concerned at the prospect of even finding a hotel room. Prior to attending the rally upon arriving in Washington, the four made a pact to meet at a monument if they were separated at any point, given the voluminous number of attendees.

Once the rally began, Kelley broke away from the group to use the restroom. The Quick brothers and Martin eventually met at the monument, with no hope of finding Kelley due to the large crowd and lack of cellphone battery and/or service. Eventually, the three men were advised Kelley was at the Capitol and told to head that way. The three men ventured towards the Capitol, which was never their initial plan in going to Washington.  The men could not have anticipated what was going to happen.

 It is important to understand that the Quicks had no intention of entering the Capitol when the trip was planned, or even once they arrived in Washington, or even during attendance at the Rally.  After getting closer to the Capitol, the Quick brothers, along with many others, chose to enter the Capitol through a window, which had been previously broken through no action of the Quicks or any member of their group (PSI at 9:32).

While inside the Capitol, the Quicks took the role of observers, and did **not** participate in chants, deface Capitol property or encourage others to do so, or try to enter other areas of the Capitol as many other attendees chose to do. The Quicks also witnessed fist-bumping between other attendees and police officers, while present inside the Capitol, as evidenced in security footage. Overall, Stephen Quick was unaware of where he even was within the Capitol and was

only inside of the Capitol at a maximum time of fifteen minutes, possibly even less estimating the time at ten minutes (PSI at 6-7:21). The Quick brothers did not touch anything while inside and simply observed, took photos, and walked through in search of an exit. Martin and the Quick brothers reacted quickly and peacefully exiting the building and travelled back to Missouri.

On January 21, 2021, Stephen voluntarily sat down with the FBI and disclosed his limited involvement in the January 6 incident (PSI at 7:21). During this initial interview, Quick expressed remorse at his involvement in going into the Capitol on January 6 and openly participated in turning over any evidence documenting his brief time in the Capitol (PSI at 7:21). Quick later sat down voluntarily on two separate occasions for at least an hour each time to subject himself to interviews with both the FBI and the House Investigative Committee to assist in the investigation and understanding of the January 6 incident.

Quick has expressed shame and remorse for his actions in entering the Capitol on January 6 through a broken window, despite not participating in or encouraging any type of damage or injury to the Capitol or those protecting the Capitol. Quick, like those he traveled with, felt compelled to go to Washington to promote election integrity, and nothing more. Quick and his brother and friend had no master plan to enter the Capitol on January 6, but rather made a reckless decision driven by adrenaline and curiosity. Quick, as a parent of three children at varying ages is embarrassed by his decision do go into the Capitol through a window and hopes to set a better example for his children in the future.

## II.     Personal History

Stephen Quick was born in New Mexico at an Air Force Base on June 26, 1972, to his parents, still living, with two brothers, one of whom is five years younger and also attended the

Capitol on January 6 (PSI at 12:48-49). Quick has been married to Laura Quick for sixteen, going on seventeen years in September, 2022 (PSI at 12:51). Quick has two twin boys, Jack and Wyatt, both ten years old, and a son from a prior relationship, Jared Quick, twenty-nine years old, all of whom Quick continues to raise and support (PSI at 12:51).

Dating back to 1999, Quick has attended training and schooling for jewelry casting and advanced jewelry work, which has assisted in the running of Quick's family business, Artisan Jewelers in Nixa, Missouri (PSI at 13:61-62). Quick has been at Artisan Jewelers as a bench jeweler for over ten years, operating the business with his mother and two brothers (PSI at 13:62-63). Quick has no mental or physical health issues, nor any substance abuse issues (PSI at 13:56-57).

Quick has **no prior significant criminal history**, as there is an objection to the characterization of the traffic stop Quick Pled Guilty to for Failure to Display Inspection Sticker and Displaying Tags of Another (PSI at 11:46). Quick vehemently denies an arrest or charge of Possession of Controlled Substance (PSI at 11:46). The alleged offense dates back to 1991 and Quick has had no issues or contacts with law enforcement aside from this incident since 1991 (PSI at 11:56).

## LEGAL SUGGESTIONS

### I.      18 U.S.C. § 3553(a) FACTORS APPLIED TO DEFENDANT

Pursuant to 18 U.S.C. § 3553(a)(1), the Court shall consider the nature and circumstances of the offense and the history and characteristics of the Defendant. Under 18 U.S.C. § 3553(a)(2), the factors regarding a need for a sentence to be imposed include: (A) reflecting the seriousness of the offense to promote respect for the law and just punishment; (B) to afford adequate deterrents to criminal conduct; (C) to protect the public from further crimes; and (D) to

provide the Defendant with needed education or vocational training, medical care or other correctional treatment in the most effective manner.

In the case-at-bar, Defendant, Quick has been married sixteen years and has three children who he raises with his wife and operates Artisan Jewelers, a family business.. All of these factors demonstrate that Martin has a strong sense of responsibility. Further, Quick continues to maintain a strong support system who holds him accountable in his wife, mother, father, brothers, and friends. This suggests a better chance of leading a productive life after the conclusion of this matter than the average similarly situated Defendant. Other than the instant offense, which has humiliated him and was Martin's first criminal offense in the past twelve years, Quick has otherwise lived a law- abiding life and still maintains an excellent reputation for his good character as evidenced by the numerous good character letters.

In considering 18 U.S.C. § 3553(a)(1), it is important to reiterate that Quick had no planned intention of entering the Capitol, was only inside of the Capitol for a matter of minutes, and did no damage to any Capitol property or protector. By voluntarily sitting with the FBI and the House Investigative Committee to be interviewed for at least an hour, Martin has exhibited an extraordinary demonstration of acceptance of responsibility in this matter. Further, similarly situated Defendants who have been sentenced for unlawfully entering the Capitol on January 6 have received probation.

Overall, 18 U.S.C. § 3553(a)(A)-(C) will be more than satisfied by a sentence of probation based on Martin's limited role in the entirety of the January 6 incident, responsibility to his children and business, as well as his remorse for entering the Capitol unlawfully.

## II. CONCLUSION

Pursuant to 18 USC § 3553(a), to a sentence of a fine and probation is respectfully recommended as sufficient, but not greater than necessary, as it reflects the seriousness of the offense, promotes respect for the law, provides just punishment, serves as a deterrent to criminal conduct, and protects the public from further crimes. Such a sentence also takes into consideration the nature and circumstances of the offense and the history and characteristics of Quick. Given Quick's lapse in judgement in entering the Capitol for a matter of minutes without disturbing anyone or anything in the Capitol, Quick should receive a sentence of probation, as opposed to the Government's recommendation of home detention.

WHEREFORE, for each of the above stated reasons and in combination of all of the factors, Defendant respectfully requests probation be granted with special conditions under supervised release and for such other and further relief as the Court deems just and proper.


RESPECTFULLY SUBMITTED,


_____/s/Joseph S. Passanise_____
JOSEPH S. PASSANISE, MO Bar #46119
TAYLON M. SUMNERS, MO Bar # 73114
Attorneys for Defendant

WAMPLER & PASSANISE
LAW OFFICE
Attorneys at Law
2974 E. Battlefield
Springfield, MO  65804
joe@deewampler.com
taylon@deewampler.com
PH: (417)882-9300
FAX: (417)882-9310

## Certificate of Service

     I hereby certify that on the 11th day of March 2022, I electronically filed the foregoing with the U.S. District Court Clerk for the Eastern District of Missouri using the CM/ECF system which sent notification of such filing to U.S. Attorney, St. Louis, Missouri.

                                                                                  /s/Joseph Passanise
                                                      Joseph S. Passanise
                                                      Taylon Sumners
                                                      Attorneys at Law